UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


REBECCA COLLINS,                  :    Case No. 1:04-CV-572
                                  :
     Plaintiff,                   :
                                  :
vs.                               :
                                  :
MICHAEL K. ALLEN, et al.,         :
                                  :
     Defendants.                  :


## ORDER GRANTING MOTION TO DISMISS

Before the Court is the Defendant's Motion to Dismiss (Doc. 80). Plaintiff opposes the motion (Doc. 85) and Defendant has replied (Doc. 88). The Court grants the motion.

### BACKGROUND

Plaintiff Rebecca Collins filed her original complaint against Michael K. Allen, former Hamilton County prosecuting attorney, and the Hamilton County Board of Commissioners. According to her complaint (Doc. 1), Collins was hired by Mr. Allen in June 1999 as a legal intern, and thereafter appointed as an assistant prosecuting attorney. Collins alleged in ¶14 that Allen sexually harassed her by forcing her to have an affair with him, threatening her with adverse employment actions if she refused. She asserted a federal equal protection claim under 42 U.S.C. §1983 and an Ohio statutory claim. Plaintiff sued Allen

-1-

in both his official and individual capacities.  Plaintiff sued the County Commissioners on a theory of derivative liability for her official capacity claims against Allen, and directly for the Board's own actions and/or inactions concerning Allen's conduct.

Plaintiff filed an amended complaint on August 31, 2004 (Doc. 5) to add a retaliation claim against Allen, based on her allegation that all of her active case files were removed from her office sometime after she complained and before she returned to work on August 30, 2004.

On January 24, 2005, Defendant Allen made an offer of judgment to Plaintiff, which she formally accepted on January 31. The Court entered judgment at Plaintiff's request upon her acceptance of that offer.  (Doc. 26)  Plaintiff's claim against Allen for attorney's fees was settled later and dismissed with prejudice.  (Doc. 84)

On May 10, 2005, Plaintiff sought leave to file a second amended complaint to add claims against Joe Deters, who succeeded Allen in the November 2004 election after Allen withdrew from the race.

On September 28, 2005, the Court granted judgment on the pleadings to the Hamilton County Board of Commissioners.  (Doc. 63)  The Court found that Plaintiff's derivative claims, premised on her allegation that Allen was an agent of the Board, had no support in Ohio law governing the office of the county

prosecuting attorney.  Plaintiff's direct claims against the Board similarly failed under Ohio law, because the Board has no supervisory authority or control over the elected prosecuting attorney.  The Court later granted Plaintiff leave to file her amended complaint, omitting all claims against Allen and the County Commissioners and naming only Deters.  That amended complaint (Doc. 76) alleges federal and state law claims against Deters in his official capacity (the "Hamilton County Prosecuting Attorney's Office") and individually.  Plaintiff has not sued Deters, or any other defendant, under Title VII.

Plaintiff's factual allegations against Deters are:

¶¶62-64:  Prior to his election, Deters made statements about Plaintiff to media reporters, including statements that "It's got to be very difficult for her," and "there's a lot of jobs out there."

¶65:  After the election, but before Deters assumed office in January 2005, Plaintiff was omitted from the January/February 2005 Municipal Court assignment schedules (which she alleges were prepared in early December 2004).

¶66:  Deters' aides interviewed all assistant prosecutors between the election and the time Deters formally assumed the office in January.  Plaintiff was interviewed on December 14.

¶68:  Deters informed Plaintiff in a December 17 written notice that she was not being reappointed to her position.

-3-

¶69:  Deters told a reporter in January 2005 that "I felt it was a distraction and it was best that she not come back," and "it's best we have a clean start."

Paragraph 70 alleges that Deters lacked a legitimate business justification to terminate Plaintiff, and that Deters retaliated against her "for exercising her legal rights to voice matters of public concern and protect herself from sexual harassment."

Deters seeks dismissal of Plaintiff's complaint under Rule 12(b)(6) on the basis of his absolute and/or qualified immunity from Plaintiff's claims.

## DISCUSSION

A.   <u>Standard of Review.</u>

A Rule 12(b)(6) motion operates to test the sufficiency of the complaint.  In considering such a motion, the court is required to construe the complaint in the light most favorable to the Plaintiff, and accept as true all well-pleaded factual allegations.  See <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), and <u>Roth Steel Products v. Sharon Steel Corp.</u>, 705 F.2d 134, 155 (6th Cir. 1983).  The court need not accept as true legal conclusions or unwarranted factual inferences.  <u>Lewis v. ACB Business Servs., Inc.</u>, 135 F.3d 389, 405 (6th Cir. 1998).  A court will, though, accept all reasonable inferences that might be drawn from the complaint.  <u>Fitzke v. Shappell</u>, 468 F.2d 1072,

-4-

1076-77 at n.6 (6th Cir. 1972).

When considering a Rule 12(b)(6) motion, this Court recognizes that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Ziegler v. IBP Hog Market, Inc., 249 F.3d 509, 512 (6th Cir. 2001) (citations omitted).

B.    Plaintiff's Equal Protection Claim.

Plaintiff alleges a violation of her constitutional rights under the Equal Protection Clause of the 14th Amendment. (See ¶74) Taking Plaintiff's allegations as true, that Deters did not reappoint her because she filed a sexual harassment complaint against Allen and the County, her termination did not violate her equal protection rights.  See R.S.W.W. v. City of Keego Harbor, 397 F.3d 427 (6th Cir. 2005), holding that a "pure or generic" retaliation claim does not arise under the equal protection clause.  See also, Strouss v. Michigan Dept. Of Corrections, 75 F.Supp.2d 711, 733-734 (E.D. Mich 1999), discussing the "great weight of authority" that the equal protection clause is not implicated by a claim of retaliation based on complaints of sexual harassment or discrimination by a supervisor.[1]  And see

---

[1]The Sixth Circuit affirmed Strouss, finding that defendants were entitled to immunity from plaintiff's due process claim, and did not expressly address an equal protection argument.  See Strouss v. Mich. Dept. Corr., 250 F.3d 336 (6th Cir. 2001).

<u>Smith v. City of Salem</u>, 378 F.3d 566 (6th Cir. 2004), noting that "the showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section § 1983." Plaintiff has not alleged that Deters treated her differently because of her gender, nor has she alleged that he discriminated against her based on her gender in the course of her employment. Her claim against Deters is for retaliation, for which the equal protection clause does not provide a remedy.

C.   <u>First Amendment Retaliation</u>.

As noted above, Plaintiff's §1983 claim is expressly based on the equal protection clause.  However, Plaintiff also alleges in ¶70 that Deters violated her "legal rights to voice matters of public concern."  It is well settled that the Court must liberally construe Plaintiff's allegations in weighing a motion to dismiss under Rule 12(b)(6).  It is also clear that a public employee's retaliation claim may be actionable under the First Amendment.  The Court will therefore construe and consider Plaintiff's claim as one for violation of her First Amendment free speech rights.

The basic elements of a First Amendment retaliation claim are that (1) plaintiff engaged in constitutionally protected speech; (2) adverse action was taken against plaintiff that would likely chill an ordinary citizen from speaking; and (3) the

-6-

adverse action was motivated, in whole or in part, by the plaintiff's protected speech.  A **public** employee's speech is constitutionally protected by the First Amendment only when the speech involves a "matter of public concern." <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983).  This threshold question is one of law, answered by the Court after considering "the content, form, and context of a given statement, as revealed by the whole record." <u>Id.</u>  If the speech is found to involve a public concern, the Court must then balance the employee's constitutional interests against "the interest of the state, as an employer in promoting the efficiency of the public services it performs through its employees." <u>Pickering v. Board of Education</u>, 391 U.S. 563, 568 (1968).

    1. <u>Matter of Public Concern</u>.

    Plaintiff's speech at issue in this case consists of an internal complaint Plaintiff alleges she lodged on August 12, 2004, and her legal complaint in this action filed fourteen days later.  While the internal complaint is not in the record, Plaintiff asserts that both complaints included the same allegations.

    Her original complaint in this action expressly admits that her internal complaint was lodged "with the hope that the matter could be resolved without the necessity of litigation."  (Doc. 1, pp. 1-2.)  She also admitted her belief that "her career as an

-7-

attorney in Hamilton County, Ohio, requiring her attendance before judges of Defendant County, has been destroyed by Defendant Allen. Plaintiff believes that any clients she may represent in the future may question whether such judges will treat her differently than other attorneys because of the conduct of Defendant Allen." Id. Her complaint then describes Allen's conduct towards her from June 1999 through August 2004, including conversations, telephone calls, and visits seeking sexual favors, all of which she alleges was uninvited and unwanted. Her original prayer for relief sought lost pay and benefits, compensatory and punitive damages, and promotions she allegedly did not receive. Her first amended complaint (Doc. 5) added a retaliation claim but did not substantively change the relief sought.

The Sixth Circuit has frequently addressed the question of what constitutes a "matter of public concern." In Dambrot v. Central Michigan University, 55 F.3d 1177, 1186 at n. 8 (6th Cir. 1995), the Court summarized many of its decisions in this area. Compare Rahn v. Drake Center, 31 F.3d 407 (6th Cir. 1994) [employee's press release attacking use of funds approved in a recent county tax levy to support a rehabilitation hospital, and attacking conversion of hospital beds from public to private, did not discuss matters of public concern], and Thomson v. Scheid, 977 F.2d 1017, 1021 (6th Cir. 1992) [conversation about proper

-8-

fraud investigation procedure was an internal departmental policy matter, not a matter of public concern], with <u>Boger v. Wayne County</u>, 950 F.2d 316 (6th Cir. 1991) [employee's response to media inquiry concerning racial discrimination charges was a matter of public concern]; and <u>Solomon v. Royal Oak Township</u>, 842 F.2d 862, 865 (6th Cir. 1988) ["speech disclosing public corruption is a matter of public interest"].

<u>Dambrot</u> rejected a First Amendment retaliation claim by a university athletic coach, who was terminated after public outcry over his use of a racially charged, derogatory term during team practices.  Plaintiff argued that he intended to use the term only as his players used it, in a positive fashion to convey a sense of strength and competition.  The Sixth Circuit rejected his argument, emphasizing that the point of the speech should not be confused with the speaker's subjective motivation.  <u>Dambrot</u> cited with approval the Seventh Circuit's articulation of the "public concern" test, which directs the court to ask "to what purposes the employee spoke.  Controversial parts of speech advancing only private interests do not necessarily invoke First Amendment protection."  <u>Dambrot</u>, 55 F.3d at 1187 (citing <u>Linhart v. Glatfelter</u>, 771 F.2d 1004 (7th Cir. 1985)).

Two Sixth Circuit opinions pre-dating <u>Dambrot</u> specifically considered retaliatory discharge claims in the context of sex discrimination or harassment charges.  In <u>Matulin v. Lodi</u>, 862

-9-

F.2d 609 (6th Cir. 1988), plaintiff sued a city police department, alleging she had been fired after talking to a newspaper reporter about sex and handicap discrimination claims she had filed with the Ohio Civil Rights Commission. The Sixth Circuit noted that her "allegations of invidious discrimination by a public employer based on the sex and perceived handicap of a public employee" implicated public concerns. There was little or no dispute in the case that the news report, and not her OCRC complaint, was the precipitating factor for her termination. In that regard, the Sixth Circuit noted that the plaintiff had not initiated the media interview, but was responding to a reporter's questions about her OCRC charges. Here, Plaintiff does not allege or refer to any statements by **Plaintiff** to the media that she alleges were the basis for her retaliatory discharge. Nor does Plaintiff allege that Allen's sexual harassment extended to other employees, or that there was any widespread "invidious discrimination" that affected the operation of the prosecutor's office.

The year after Matulin, the Sixth Circuit decided Rice v. Ohio Dept. Of Transportation, 887 F.2d 716 (6th Cir. 1989), vacated and remanded on other grounds, 497 U.S. 1001 (1990). That case involved a retaliation claim based on plaintiff's previous filing of a sex discrimination complaint. The Circuit rejected a broad assumption that any adverse public employment

decision that follows a complaint about discrimination is necessarily a matter of public concern. Rice cited with approval the Seventh Circuit's decision in Yatvin v. Madison Metropolitan School Dist., 840 F.2d 412 (7th Cir. 1989), which held that a "run-of-the-mine single-plaintiff discrimination case" was not a matter of public concern: "Although it may be natural for lawyers to suppose that every legal pleading, however humble, comes trailing clouds of First Amendment glory, this quaintly Wordsworthian supposition is simply untenable." Rice, 887 F.2d at 720 (quoting Yatvin, 840 F.2d at 420). The Rice Court also noted that while litigation to eliminate segregation is unquestionably a matter of public concern, "a plaintiff's action to advance her career, not promote a cause," is not. Id. at 721. Rice distinguished Matulin because there, plaintiff was "merely responding to media inquiries" about an already public controversy, and was fired for it. (Mr. Rice had been told by his supervisor that he was not promoted because of his previous sex discrimination charge, which led to his lawsuit.)

Against this backdrop of decisions, this Court observed some time ago that "a fairly bright line can be drawn between the expression of a concern about malfeasance of some type in the operation of a public agency, whether it relates to misuse of public funds, public corruption, or other such matters, and speech relating entirely or almost entirely to a particular

employee's job situation."  Ohio Council of the Blind v.
Voinovich, 1994 U.S. Dist. LEXIS 21292 (S.D. Ohio 1994).
Appellate decisions since 1994 confirm this Court's observation.
For instance, a prison disciplinary hearing officer's claim of
retaliation based upon the content of his decisions, which he
argued were intended to guarantee prisoners the "full panoply of
rights due a defendant," was held to be a matter of public
concern.  See Perry v. McGinnis, 209 F.3d 597 (6th Cir. 2000).
Similarly, in Latham v. Attorney General, 395 F.3d 261 (6th Cir.
2005), an assistant attorney general's letter to her ultimate
supervisor, the Ohio Attorney General, stating her concerns about
inadequate enforcement of Ohio's consumer protection laws was
found to be a matter of public concern.  In Chappel v. Montgomery
County Fire Dist., 131 F.3d 564 (6th Cir. 1997), plaintiff spoke
out in public meetings about gross financial mismanagement in the
Fire Department, misappropriation of agency funds, nepotism that
contributed to those problems, and the fire chief's conflict of
interest in responding to such issues.  These were found to be
matters of public concern, despite plaintiff's motivation to
obtain a better position in the department.

On the other hand, a public school janitor's repeated
complaints about his job situation and adverse job actions, acts
of retaliation he alleged were based on his union steward status,
did not raise matters of public concern, but were found to be

complaints about plaintiff's individual job situation.  See

<u>Farhat v. Jopke</u>, 370 F.3d 580 (6th Cir. 2004).  In <u>Gragg v. Ky.

Cabinet for Workforce Dev.</u>, 289 F.3d 958 (6th Cir. 2002), a

publicly employed regional educational consultant's complaints

about educational accreditation data quality, and improper

allocation of public funds, did not raise matters of public

concern.  The Sixth Circuit noted that even an issue relating to

public funds expenditures is not automatically entitled to First

Amendment protection.  Similarly the fact that an issue might be

of public "interest" is not enough.[2]  <u>Id.</u> at 966.  <u>Gragg</u> also

concluded that a letter from plaintiff's attorney to the agency

stating plaintiff's opposition to her proposed termination, which

implicated concerns beyond plaintiff's own position, failed to

raise a matter of public concern.

In <u>Miller v. Admin. Office of the Courts</u>, 448 F.3d 887 (6th

Cir. 2006), a court clerk's complaints about fraud, waste and

mismanagement in court administrator's office, and staff

mismanagement that caused the office to forfeit previously

secured private donations, did not raise issues of public

concern.  And, in an unpublished opinion, the Sixth Circuit

---

[2] In this regard, see <u>Zorzi v. County of Putnam</u>, 30 F.3d
885, 897 n. 11 (7th Cir. 1994): "It is important not to equate
the public's curiosity about a matter with the matter having
societal ramifications.  People may be interested in any number
of aspects of the lives of public officials and employees, but
that does not mean that such matters have societal
ramifications."

reversed the dismissal of a black college professor's First Amendment §1983 claim because the record failed to disclose the specific content of the professor's EEOC complaints, which he alleged led to his retaliatory discharge. The Court specifically noted that "Litigation, even over such socially sensitive issues may, or may not, be a matter of public concern." The relevant question was whether his complaints were about "racial discrimination in general on campus, or whether his career was his primary concern." Cox v. Shelby State Comm. College, 48 Fed. Appx. 500 (6th Cir., September 24, 2002), at *508-509.

A recent Sixth Circuit opinion addressing this issue notes that an important "contextual" clue to determining "public concern" is whether the employee is speaking as a citizen or as an employee upon matters of personal interest. See Nair v. Oakland County Comm. Mental Health Auth., 443 F.3d 469, 478 (6th Cir. 2006) (citing Connick). In Nair, a medical director of a community mental health center complained about the decision to cut his position to half-time. His repeated complaints, despite the fact that they touched on patient care quality and safety issues, were found to be matters concerning the terms and conditions of his employment, and not matters of public concern.

This discernible line between speech directed at public concerns about malfeasance in public agencies, and an employee's individualized job concerns that may touch on some public

-14-

interest, comports with the Supreme Court's admonition in
Connick, that an overly broad interpretation of "public concern"
will result in virtually every adverse employment action planting
the seed of a constitutional case.  Government simply could not
function if every public employment decision became a
constitutional matter.  See Connick, 149 U.S. at 143.  (The
distinction between employee acting as citizen, and employee
acting as employee, was recently reaffirmed in Garcetti v.
Ceballos, ___ U.S. ___, 126 S.Ct. 1951 (2006).  As in Connick,
Garcetti also involved the termination of an assistant district
attorney.)

Other circuits have framed this question in similar terms,
inquiring whether the plaintiff's speech is directed at exposing
system-wide discrimination, or simply seeking to advance or
protect the plaintiff's personal interests.  See, e.g., Yatvin,
discussed above.  And see Morgan v. Ford, 6 F.3d 750, 755 (11th
Cir. 1993): "The record shows that Morgan's speech was driven by
her own entirely rational self-interest in improving the
conditions of her employment . . . She did not relate her
concerns about sexual harassment to the public."  See also,
Ferrara v. Mills, 781 F.2d 1508 (11th Cir. 1986): "We hold merely
that a public employee may not transform a personal grievance
into a matter of public concern by invoking a supposed popular
interest in the way public institutions are run."

In contrast, see <u>Marshall v. Allen</u>, 984 F.2d 787, 796 (7th Cir. 1993), where a male employee's support for female colleagues' Title VII complaint was a matter of public concern because plaintiff was not himself the victim.  Similarly, in <u>Konits v. Valley Stream Central High School Dist.</u>, 394 F.3d 121 (2d Cir. 2005), a public school teacher's retaliation claim was based on her help and support of another employee's discrimination case.  The Second Circuit held that speaking out on another employee's behalf was not done to redress the teacher's own grievance, but had a "broader public purpose of assisting in redressing gender discrimination."

This Court concludes that the record in this matter is quite clear.  Plaintiff's complaints against Allen and the County were directed at her own job conditions, and were made to protect her self-interest.  Her complaints do not allege or attempt to expose any pattern of sexual harassment or discrimination in the county prosecutor's office during Allen's tenure.  The greater weight of authorities discussed above direct the Court to consider the **point** of Plaintiff's speech, not her subjective motivations.  The point of her complaint was, without doubt, to seek compensatory damages and to keep her job.  Therefore, this Court concludes that her speech does not raise a matter of public concern for First Amendment purposes.

-16-

2.  <u>Pickering</u> Balancing Test.

Even if the Court could conclude that Plaintiff's speech tangentially raised a matter of public concern, and therefore was protected to some degree by the First Amendment, Plaintiff's allegations against **Deters** lead the Court to conclude that her individual interests in filing the lawsuit against Allen and the County do not outweigh the interests of Deters, as the newly elected county prosecutor, in determining that Plaintiff's appointment would not be renewed.  See <u>Pickering v. Board of Education</u>, 391 U.S. 563, 568 (1968).

Plaintiff's internal complaint and her lawsuit were filed in August 2004, but Plaintiff remained employed with the prosecutor's office until mid-December, when Deters chose not to reappoint her.  As Plaintiff admits in her complaint, Deters told a media reporter in January 2005 that "I felt it was a distraction and it was best that she not come back," and "it's best we have a clean start."

Plaintiff was an at-will employee who could be terminated at any time with or without cause.  See generally, O.R.C. 309.06, giving county prosecuting attorneys discretionary authority to hire assistants as needed.  This at-will status reflects the reality of working as a lawyer on the staff of an elected county prosecutor, who must have full trust and confidence in the assistant prosecutors he or she appoints.  As noted above,

-17-

Connick recognized this reality, as the case arose out of the
termination of an assistant district attorney, Ms. Myers, based
upon her circulation of an internal memo asking for colleagues'
feedback on issues such as office morale, confidence in
supervisors, the need for a grievance committee, and pressures
for involvement in political campaigns.  The Supreme Court found
that all of Myers' speech, save for the political campaign
question, were not matters of public concern.  And even though
the political campaign question "touched" on a matter of public
concern, the Supreme Court reversed the district court's judgment
in favor of Myers, finding that the district court had
erroneously imposed "an unduly onerous burden" on the state to
justify Myers' discharge.  The Supreme Court expressly held that
the district courts ". . . must reach the most appropriate
possible balance of the competing interests."  Just because the
speech may implicate public concern does not shift the burden to
the government to "clearly demonstrate" that the employee's
speech "substantially interfered" with official responsibilities
or proper office function.  Connick, 461 U.S. at 149-150.

     This balancing test was recently (and in this Court's view
correctly) applied in Bibb v. Newman, 997 F.Supp. 1174 (S.D. Ind.
1998).  Bibb was an assistant county prosecutor, hired by the
chief elected prosecutor (Modisett).  During Modisett's term in
office, Bibb complained publicly and privately about alleged

salary inequalities between male and female prosecutors.  Bibb
was then quoted in a newspaper article concerning those
inequalities.  About six weeks later, Modisett was defeated in
the election by Newman.  A week after the election, Bibb filed an
EEOC claim against the prosecutor's office, claiming wage and job
classification discrimination and retaliation.  Newman took
office on January 1, and fired Bibb a few weeks later.  The
district court found that Bibb's EEOC complaint, and discussions
with the media about that complaint, were not matters of public
concern, as her complaint addressed her own issues concerning
salary and retaliation against her.  However, her statements to
the newspaper about salary discrimination between male and female
prosecutors were a matter of public concern.  Thus, the "decisive
question" before the court was whether the interests of the
prosecutor's office in the efficiency of its public services
outweighed Bibb's interest in speaking freely to the press.

   The district court concluded that the employment
relationship between the elected prosecutor and his deputies
requires both personal loyalty and a very high degree of trust
and confidence.  The court concluded that Newman's interest in
having deputy prosecutors of his choosing, in whom he presumably
could repose both trust and confidence, outweighed Bibb's First
Amendment right.

   This Court reaches the same conclusion in this case.

D.  <u>Qualified Immunity</u>.

The Court has concluded that Plaintiff's constitutional rights under the First Amendment were not violated by Deters' decision not to renew her appointment.  Therefore, Deters is entitled to qualified immunity.

To defeat a state actor's immunity claim, Plaintiff must show a violation of her constitutional right, <u>and</u> show that the right was "clearly established" at the time of the challenged action.  See, e.g., <u>Dominique v. Telb</u>, 831 F.2d 673 (6th Cir. 1987).  A constitutional right is "clearly established" when the constitutional principle is announced by a decision of the Supreme Court, the highest Court of the state, or a Court of Appeals.  <u>Robinson v. Bibb</u>, 840 F.2d 349 (6th Cir. 1988).  As noted in <u>Key v. Grayson</u>, 179 F.3d 996, 1000 (6th Cir. 1999), for qualified immunity to be surrendered, "pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about) the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." (internal citation omitted)

Qualified immunity protects public officials not only from civil damages, but also from the rigors of litigation.  <u>Summers v. Leis</u>, 368 F.3d 881, 886 (6th Cir. 2004).  The Supreme Court has recognized that an important purpose of qualified immunity "is to protect public officials from the 'broad-ranging discovery' that

can be 'particularly disruptive of effective government.'"
Anderson v. Creighton, 483 U.S. 635, 646 (1987).

As discussed above, the Court concludes that Plaintiff has
not alleged a First Amendment retaliation claim against Deters.
But if such a claim could be discerned, the Court concludes that
this First Amendment right was not "clearly established" in
December 2004 such that Deters should be denied immunity.  As is
evident from the cases discussed above addressing what is and is
not a "matter of public concern," determination of the First
Amendment constitutional right is premised on determining the
point of the employee's speech.  A reasonable public official
reviewing Plaintiff's complaint against Allen and the County
could fairly conclude that her complaint was directed entirely to
her own, personal situation.  She sought individual damages, and
stated that the internal complaint was filed to avoid litigation.
The Court cannot conclude that prior decisions of the Supreme
Court or the Sixth Circuit so clearly established Plaintiff's
First Amendment right that there would be "no doubt" in the mind
of a reasonable, newly-elected county prosecutor that his conduct
was unconstitutional.  Indeed, the clearly established authority
in Connick and its progeny grants broad authority and discretion
to an elected local prosecutor to make employment decisions that
may not seem "fair" or may seem arbitrary, but do not violate an
employee's constitutional rights:  "When a public employee speaks

-21-

not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."  <u>Connick</u>, 461 U.S. at 147.

For this reason, too, the Court concludes that Deters is entitled to immunity from Plaintiff's claims, both individually and in his official capacity.

E.    <u>State Law Claims</u>

Since the Court is dismissing Plaintiff's federal law claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim.  The Court also notes that Allen's counterclaim against Plaintiff for defamation remains at issue. The Court finds there would be no substantial savings in judicial resources from resolving either Plaintiff's or Allen's state law claims at this time.  See <u>Hankins v. The Gap, Inc.</u>, 84 F.3d 797, 803 (6th Cir. 1996).  Both of those claims are therefore dismissed without prejudice.

SO ORDERED.


DATED: August 28, 2006                    <u>s/Sandra S. Beckwith</u>
                                          Sandra S. Beckwith, Chief Judge
                                          United States District Court